(No. 12252.—Judgment affirmed.)

THE SMITH-LOHR COAL MINING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (MAYME JONES, Admx., *et al.* Defendants in Error.)

*Opinion filed December 18, 1918.*

1. WORKMEN'S COMPENSATION—*to entitle widow to award it is not necessary that she be living with husband at his death.* Under paragraph (*a*) of section 7 of the Workmen's Compensation act it is not necessary, in order to entitle the widow to an award, that she be living with her husband at the time of his death, but it is sufficient if he was under legal obligation to support her.

2. SAME—*fact of injury or death may be shown by circumstantial evidence.* To establish a liability under the Workmen's Compensation act, the fact of the injury or death and that it arose out of and in the course of the employment may be shown by circumstantial evidence.

3. SAME—*paragraph (f) of section 7 of Compensation act, as to payment to legal representative, construed.* Paragraph (*f*) of section 7 of the Workmen's Compensation act, providing that the employer may pay the compensation to the personal representative of the deceased, to be distributed to the heirs who formed the basis for determining the amount of compensation, was intended to apply only where compensation is voluntarily paid without a hearing.

4. SAME—*when Industrial Commission must determine who is entitled to compensation.* If compensation is to be fixed by the Industrial Board, the board, in order to determine the amount, must also determine who is entitled to the compensation, and the fact that in a particular case the amount will be the same whichever of the contesting claimants is entitled to the award does not relieve the board of such duty nor impose it upon the probate court.

5. APPEALS AND ERRORS—*when parties cannot object to incompetent evidence.* Parties who, on cross-examination of the claimant in a workmen's compensation case, bring out certain evidence tending to establish her divorce from a former husband before she married the deceased employee, cannot object later that such evidence was incompetent to prove the divorce.

WRIT OF ERROR to the Circuit Court of Christian county; the Hon. J. C. McBRIDE, Judge, presiding.

CHARLES C. LEFORGEE, GEORGE W. BLACK, and THOS. W. SAMUELS, for plaintiff in error.

CHARLES E. SPRINGSTUN, and W. B. McBRIDE, for defendant in error Mayme Jones, Admx.

GRIFFITH & VOGELSANG, and McDAVID & MONROE, for defendants in error S. A. Jones and Elizabeth Jones.

Mr. JUSTICE FARMER delivered the opinion of the court:

William D. Jones, an employee of the Smith-Lohr Coal Mining Company, the plaintiff in error, died in the mine of the plaintiff in error, and while in its employ, shortly after noon on the day of September 26, 1916. Mayme Jones, claiming to be his widow, was appointed administratrix of his estate and filed an application for an adjustment of claim with the Industrial Commission, stating that the deceased came to his death while in the employ of the plaintiff in error. S. A. Jones and Elizabeth Jones, parents of deceased, filed an intervening petition, claiming they and not the widow were entitled to an award under the act. The cause was heard by an arbitrator, where it was agreed that both decedent and plaintiff in error were subject to the provisions of the Workmen's Compensation act on the day of decedent's death, and if there was any liability at all it was for $3500. Upon the hearing before the arbitrator Mayme Jones contended she was entitled to an award under the act as the widow of decedent, whom

he was under obligation to support. The parents claimed Mayme Jones was not the widow of decedent, having never been legally married to him; that decedent was under no legal obligation to support her, and that she was living separate and apart from him at the time of his death without his fault. Paragraph (*a*) of section 7 of the act in force at the time the death occurred provided for the payment of compensation to any widow, child or children whom the deceased was under legal obligation to support, and we have held it is not required that the husband and wife be living together at the time or that she be dependent upon him for support. It is sufficient if the husband was under legal obligation to support the wife. (*Goelitz Co.* v. *Industrial Board,* 278 Ill. 164.) The parents contended they were entitled to an award as surviving parents, to whose support decedent had contributed within four years next preceding his death. Both the widow and the parents contended decedent's death arose out of and in the course of his employment. The arbitrator found that decedent's death was due to natural causes and not to an accidental injury arising out of his employment and denied an award. Petitioners submitted the case for review to the Industrial Commission, which, on the same evidence heard before the arbitrator, set aside the decision of the arbitrator and rendered an award of $3500 against plaintiff in error and in favor of the widow. Upon a petition for *certiorari* the circuit court of Christian county reviewed the decision and award of the Industrial Commission, confirmed the same and entered judgment thereon. The circuit court certified the case was one proper to be heard by this court, and the case comes to this court for review by writ of error.

Plaintiff in error urges as grounds for reversal (1) that the evidence does not prove the decedent's death was the result of an accidental injury arising out of and in the course of his employment; and (2) that neither the widow

nor the parents of decedent established the required relationship and dependency under the act to entitle either to compensation.

The widow and the parents were represented by different counsel in the hearings had before the arbitrator, the Industrial Commission and in the circuit court and they have filed separate briefs in this court. Both urge liability under the act, and each contends that they alone are entitled to the compensation. Counsel for the parents also ask a construction of the Workmen's Compensation act as to whether that act requires a determination by the Industrial Commission as to who is entitled to the award; or if that question should be left to be determined by the probate court when distribution is made of the award.

In discussing the first contention of plaintiff in error it will be necessary to review the evidence,—not to pass upon its weight, but to see if there is any evidence tending to show that the death arose out of and in the course of decedent's employment. (*Albaugh-Dover Co.* v. *Industrial Board,* 278 Ill. 179; *Big Muddy Coal and Iron Co.* v. *Industrial Board,* 279 id. 235.) The fact of the injury or death and that it occurred in connection with the employment may be shown by circumstantial evidence. *Ohio Building Safety Vault Co.* v. *Industrial Board,* 277 Ill. 96.

Decedent had been in the employ of plaintiff in error in its mine for several years. At the time of his death his duties consisted of operating a motor car in the south entry of plaintiff in error's mine. He hauled empty cars from the bottom of the shaft south through the south entry for a mile or more and then east for about one-half a mile to a place called the "parting," where there was a switch track. He would there leave his string of empty cars and haul a string of loaded cars back to the bottom of the shaft, returning the same way he came. There was but a single-track railway in said entry, and it is from one and one-half miles to two miles from the bottom of the

shaft to the place called the parting. The motor car operated by deceased had a trolley pole extending from the car to a trolley wire along the west side of the south entry. There was a seat on the motor car for the motorman and a head-light on each end of the car. When a string of empty cars was taken from the shaft to the switch or parting, the motorman, by using a lever for that purpose, could cut off the cars from the motor car and they would be switched onto a track to be loaded, and the motor car would go on the track where loaded cars stood, couple on to said cars and haul them back to the shaft. A man stayed at the switch or parting for the purpose of throwing the switch. Decedent had made several trips of this character the forenoon of the day of his death. After lunch on the day of his death he started from the shaft with a string of some fifteen empty cars for the parting. Two employees of plaintiff in error were standing at the switch or parting ready to throw the switch. They saw deceased coming with his string of cars and noticed something was wrong, for instead of slackening the speed of the cars and detaching the cars from the motor car he came on at a fast rate of speed,—so fast that the switch could not be thrown and the string of empty cars ran into the string of loaded cars, causing several to be derailed and coal to be thrown all around. Decedent did not have hold of the controller and was paying no attention to his train but had his head and arms resting on the controller and appeared to be either unconscious or dead. When the men at the switch reached deceased after the collision he was in the same position and was dead. He had two slight scratches on his face and his neck was broken. His cap was later found about a mile from the parting, on the floor of the entry, and the lamp on his cap was still burning. Upon an examination of decedent's body no other marks or other signs of physical injury were apparent except an indentation on the face, apparently caused by the pressure of his face against

the controller. The roof of the entry through which the string of cars passed was at the lowest place about sixty-five inches from the rail or about three and one-half feet above the decedent's seat as motorman. This point was seventy-five feet north of where decedent's cap was found and about a mile from the parting. One of the men who was at the parting at the time of the accident testified that a motorman at times had to stand up to see if his string of cars was running along all right.

Two doctors examined the body some four or five hours after the accident, and while neither expressed an opinion as to how or when decedent's neck was broken, one of them testified some necks are easily broken, and that a man's neck might be broken by coming in contact with a flat surface without the skin being broken if at the place of the blow there was sufficient protection. The two doctors testified that, assuming decedent's head was resting on his hands or arms at the time his train of cars ran into the loaded cars, the shock of the collision would not, in their opinion, have been sufficient to have broken his neck.

It is the theory of plaintiff in error that deceased died from natural causes on his way from the bottom of the shaft with the train of empty cars to the place where he was to leave them and take loaded cars. Deceased had complained that day of not feeling well and did not eat his lunch. It was shown that he indulged in drinking intoxicating liquor, some witnesses testifying he would drink until intoxicated, while others testified that he did not drink excessively and that they had never known him to be intoxicated. There was a depression or indentation in the skin of the face of deceased, which remained after he was taken out of the mine and turned over to the undertaker. The undertaker and physicians testified that in their opinion this indentation was caused by the face resting on some hard substance after death. There is no dispute that deceased's neck was broken, and the evidence tends to rebut the theory

that this occurred when the motor car came in collision with the loaded cars. The proof warrants the inference that deceased's neck was broken before that time, and the further inference that this was the cause of his death. There is no direct evidence just how the neck came to be broken. The most reasonable inference from the testimony is that while the cars were moving deceased's head came in contact with the roof of the mine. This could easily have occurred by his rising from his seat to look after his train of cars at a point where the roof was lowest, and it was not far from a low point or place in the roof that his cap was found. The finding of the cap would warrant the conclusion that deceased's head came in contact with something which knocked the cap off his head. Plaintiff in error contends that if this had occurred there would have been physical evidences on the head where it came in contact with the roof. There was medical testimony that a cap might be sufficient protection to prevent this, and that the necks of some men are more easily broken than the necks of others. While the evidence is by no means conclusive, it fairly tends to prove that the death resulted from an accident arising out of and in the course of the employment.

Mayme Jones testified she was the widow of William D. Jones, the deceased, and put in evidence a certificate of her marriage with him. She had been previously married to a man by the name of Dobbs, and it is insisted it was not shown that Dobbs was dead or that she had ever been divorced from him. She claims the award on the ground that she is the widow of deceased and entitled to his support. There were no children of the marriage. The parents of William D. Jones claim that the widow was living separate and apart from her husband before and at the time of his death and that he neither supported nor was under legal obligation to support her. They claim the award on the ground that the deceased had contributed to their support within four years previous to his death. It is stated

in the brief of their counsel that it was the view of the circuit court that which of the claimants was entitled to the award was a question to be determined by the probate court that appointed the administratrix. The award made was within the limits fixed by statute in such cases whether the widow or the parents were entitled to it. Paragraph (*f*) of section 7 of the Workmen's Compensation act in force at the time of the death reads as follows: "The compensation to be paid for injury which results in death, as provided in this section, shall be paid at the option of the employer either to the personal representative of the deceased employee or to his beneficiaries, and shall be distributed to the heirs who formed the basis for determining the amount of compensation to be paid by the employer, the distributees' share to be in the proportion of their respective dependency at the time of the injury on the earnings of the deceased: *Provided,* that, in the judgment of the court appointing the personal representative, a child's distributive share may be paid to the parent for the support of the child. The payment of compensation by the employer to the personal representative of the deceased employee shall relieve him of all obligations as to the distribution of such compensation so paid. The distribution by the personal representative of the compensation paid to him by the employer shall be made pursuant to the order of the court appointing him." (Hurd's Stat. 1916, p. 1275.)

The statute authorizes the employer, at his option, to pay the compensation provided by section 7 either to the personal representative of the deceased or to his beneficiaries, to be distributed to the heirs who formed the basis for determining the amount of the compensation. The payment to the personal representative of the deceased employee, the statute provides, shall relieve the employer of all responsibility for the distribution of the compensation so paid, and the distribution by the personal representative shall be made pursuant to the order of the court appoint-

ing him. In our opinion the statute as to distribution of the amount paid by the employer to the personal representative of the deceased applies only in cases where the employer voluntarily pays the compensation to the personal representative of the deceased without a hearing and determination before an arbitrator or the Industrial Commission. If the compensation is fixed by the Industrial Commission it is required to determine who is entitled to the compensation before it can determine the amount, for if the persons or classes described in paragraphs (*a*) and (*b*) of section 7 are entitled to the award, the amount to be awarded is different from the amount authorized by the other paragraphs of said section. Here an administratrix of the deceased employee was appointed, and no payment having been voluntarily made by the employer the proceeding authorized by the statute for compulsory payment was instituted. No one could doubt that if the contesting claimants for the award were the persons embraced in paragraphs (*a*) and (*c*) the amount of the award could not have been determined without determining the persons who were entitled to it. The fact that the claimants were the persons described in paragraphs (*a*) and (*b*), under which paragraphs the amount of the compensation provided is the same, could not operate to relieve the Industrial Commission from the duty of determining the person or persons who were entitled to the compensation. We do not construe the statute in such cases as this to leave it to the probate court to determine who is entitled to the award made by the Industrial Commission.

Mayme Jones testified on her first examination, in her own behalf, that she was married to deceased, William D. Jones, May 20, 1914, and produced and offered in evidence the marriage certificate. On cross-examination by counsel for plaintiff in error she testified she had left her husband about four months before he died, during which time she lived with her mother in East St. Louis; that she had left

her husband temporarily. On cross-examination by counsel for the mother and father of deceased, Mayme Jones testified she was married to Francis Dobbs in St. Louis in 1908 and lived with him about a year. They had no children. She was not living with Dobbs at the time of his death, which she testified occurred before she was married to deceased, and that she and Dobbs were never divorced. Nancy Elizabeth Jones, mother of deceased, called as a witness in her own behalf, testified her son and Mayme Jones lived at her house about five months after their marriage; that Mayme Jones then went back home and stayed some time, and on her return she and deceased lived in another house. They separated twice before the death of decedent. Mayme Jones was recalled by her counsel to testify as to the correctness of certain statements attributed to her by other witnesses who had testified on the hearing. On cross-examination by counsel for decedent's parents she testified she learned of her first husband's death through his relatives living in East St. Louis and that she had no other information of his death. She further testified that she was confused when she said she had never been divorced from her first husband when she was first on the witness stand. She testified she was divorced from him about 1908, which was after she had heard he was dead; that the divorce was procured at the court house in East St. Louis, in which city she was living at that time. She could not remember her attorney's name but said the judge's name was Flannigan. This testimony not only was not objected to at the time, but it was developed and brought out by counsel who now object to it as incompetent to prove the divorce. They cannot now be heard to raise that objection. *Goelitz Co.* v. *Industrial Board, supra.*

The judgment of the circuit court is affirmed.

*Judgment affirmed.*