(No. 12864.—Judgment affirmed.)

THE E. E. WALSH TEAMING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(TULINE PETERSON, Admx. Defendant in Error.)

*Opinion filed December 17, 1919.*

1. WORKMEN'S COMPENSATION—*when an award must be sustained—circumstantial evidence.* Where both employer and employee are under the Compensation act, an award must be sustained if there is any competent evidence in the record tending to show that the injury was received by the employee while in the performance of any act incidental to his employment, and if the employee is killed and there are no eye-witnesses such proof may be made by circumstantial evidence.

2. SAME—*when death of truck driver arises out of and in the course of his employment.* Where it is the duty of drivers of a teaming company to sign a receipt before taking away a load of goods from a store, a driver who is accidentally killed at an elevator shaft on the loading platform where the drivers sometimes got their receipts is killed in the course of his employment, where the evidence shows the deceased was waiting to sign his receipt at the time of the accident.

3. SAME—*negligence of employee does not bar recovery of compensation.* Negligence of an employee in the discharge of a duty does not bar him or his administrator from recovering compensation under the Compensation act.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

GALLAGHER, KOHLSAAT & RINAKER, for plaintiff in error.

MOSES, ROSENTHAL & KENNEDY, (S. SIDNEY STEIN, of counsel,) for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On May 6, 1918, the Industrial Commission sustained the decision of the arbitrator awarding to the defendant in error, Tuline Peterson, widow and administratrix of An-

drew Peterson, deceased, the sum of $9.38 per week for a period of 373 weeks and $1.26 for one week, against plaintiff in error, under the Workmen's Compensation act, for the death of the deceased, who was employed by plaintiff in error as a truck driver. A writ of *certiorari* was sued out of the circuit court of Cook county. That court affirmed the finding and decision of the Industrial Commission and certified that the cause is one proper to be reviewed by this court.

It is conceded that at the time of his death the deceased was in the employment of plaintiff in error and that both parties were operating under the provisions of the Workmen's Compensation act. The only question raised in this case by plaintiff in error is whether or not the injury and resultant death of Andrew Peterson arose out of and in the course of his employment.

Plaintiff in error's business on the date of the accident was that of general teaming in the city of Chicago, and the deceased had been in its employment as truck driver for about six years prior to that time. When the deceased met his death he was hired out by plaintiff in error, with his truck, to the J. P. Lynch Teaming Company, pursuant to a custom in the teaming business in Chicago whereby one company obtains the use of the wagons or trucks and drivers of another company. About six o'clock in the afternoon of December 5, 1917, the deceased was sent by the Lynch Teaming Company to Kling Bros. & Company's place of business, on Fifth avenue, for a load of goods to be transferred to the quartermaster's depot in Chicago. The quartermaster would receive nothing after four o'clock P. M., and the load which the deceased was transferring for Kling Bros. & Company was to be taken to plaintiff in error's barn for the night and to the quartermaster's depot on the next morning. The deceased had unloaded a load of incoming freight at Kling Bros. & Company's place, and his truck was re-loaded with the out-going merchandise for the quar-

termaster from a loading platform on the first floor of the building. It was a part of the deceased's duty to take a receipt from the shipping clerk of Kling Bros. & Company to the quartermaster's depot, and, after having the same signed by the proper officer at the quartermaster's depot, to return the receipt to the Lynch Teaming Company, who would in turn give it to Kling Bros. & Company. The driver also signed a receipt for the goods for transfer. The shipping and packing clerks worked in the basement, which was reached by the drivers from an outside door in the rear or by a stairway from the front part of the building or by the elevator which passed through the loading platform on the first floor and ran from the basement to the tenth and intervening stories above. The door to the elevator shaft opened from the inside by half of it going upward and the lower half descending to a point a few inches below the floor of the loading platform. This elevator door fastened automatically from the inside and could not be opened by anyone from the outside of the door when the latch thereof was caught or securely fastened. The room in which the loading platform was located was lighted with a fifty-candlepower electric bulb, and the elevator cage which passed through the loading platform carried a light sufficient to keep it well illuminated. When the deceased's truck had been loaded and he had securely fastened the boxes of goods on his truck with a rope he started to move his truck so that another truck driver might get his truck up to the loading platform. Thinking that the deceased was leaving with his load, the elevator operator called to him not to leave without his receipt for the goods. The operator made this call to the deceased as he was ascending with some boxes to be taken to the tenth and other floors above the loading platform, and he made his call to the deceased through the door of the elevator shaft as he was passing the platform upward, and, according to

his testimony, he probably then opened the elevator door. The deceased responded to the call not to leave without his receipt and returned to the loading platform, evidently to get the receipt. As the elevator was returning from the upper floors to the basement the shipping clerk in the basement looked up the elevator shaft and called to the elevator operator to come down and get the receipt for the deceased and not to let the deceased go away without it. Just after that the shipping clerk, and a packing clerk who was with him in the basement, at the foot of the elevator, and who had the driver's receipt to send up by the elevator man, saw a cap fall down the elevator shaft, followed by streams of blood falling from above. They then heard the elevator man say to them that he could not come down after the receipt because he had some man squeezed in between the floor of the elevator and the floor of the loading platform. They then rushed from the basement to the loading platform and there found the deceased's body lying face downward on the loading platform with his head crushed in between the elevator floor and the floor of the loading platform. The upper part of the elevator door was just a few inches above the floor of the loading platform. The deceased had been killed outright.

There was no eye-witness as to what the deceased was doing at and immediately prior to the accident, but circumstantial evidence tends to show that the deceased was killed while on his way to the basement to get the receipt aforesaid or while waiting at the elevator to get his receipt from the elevator operator. The circumstances also tend strongly to show that the operator of the elevator had not latched the elevator door securely after he had called to the deceased to get his receipt, or the elevator door could not have been opened by the deceased so that his head could be passed through the door. It is most probable that when the shipping clerk called from below to the elevator operator

not to let the deceased go away without his receipt, the deceased at that moment attempted to look down the elevator shaft through the partly opened door and that at the same moment the elevator from above caught his head and pressed it and the lower part of the door to the platform and crushed his head, as already related. If it did not occur in that way the deceased must have been in some manner leaning against the partly opened door or pressing against the lower part thereof so as to cause it to descend to the floor with him and at the same time carry his body or head under the elevator as it came down, so that he was caught before he could get away from it. At any rate, it is clearly shown, circumstantially and otherwise, that the deceased was endeavoring to get the receipt while on his way to the basement therefor or while waiting at the elevator for the same, and that in doing so he was engaged in an act that was clearly within the line of his employment. The evidence of all the witnesses shows that it was a part of the driver's duty, in connection with his hauling, to sign a receipt for the goods and to get a receipt from this clerk to be signed by the quartermaster. The evidence further shows that the drivers used all three of the methods of going to the basement for the receipts,—by the stairway, by the elevator and also by the rear doorway,—and that they sometimes got them from the operator of the elevator.

There is competent evidence in the record tending to support the findings of the commission that the death of the deceased arose out of and in the course of his employment. This court is therefore not authorized to disturb the award. The award in all cases must be affirmed if there is any competent evidence in the record tending to show that the injury received by the deceased was received by him in the performance of any act incidental to his employment. (*Lefens* v. *Industrial Com.* 286 Ill. 32.) Such proof may be made by circumstantial evidence. *Smith-Lohr Coal*

*Mining Co.* v. *Industrial Com.* 286 Ill. 34; *Ohio Building Vault Co.* v. *Industrial Board,* 277 id. 96. ·

Plaintiff in error's contention that the evidence shows no causal relation between the accident and the employment of the deceased, for the reason that he was entirely outside of the work for which he was employed and was voluntarily doing an act in no way connected with his employment when he was killed, cannot be sustained. The act of obtaining his receipt was clearly within the line of his employment or an incident of the same, and he was injured while trying to get his receipt. Negligence in the discharge of a duty does not bar an employee or his administrator from recovering compensation. The cases of *Dietzen Co.* v. *Industrial Board,* 279 Ill. 11, *Northern Illinois Traction Co.* v. *Industrial Board,* 279 id. 565, and *Central Garage of LaSalle* v. *Industrial Com.* 286 id. 291, are not in point. In the first two cases the employees were clearly outside of their line of employment and were doing things that were not incidents to the same and against the instructions that were given to them by their employers. In the last case the employee had abandoned the employer's employment and was voluntarily on a pleasure ride not connected with his employment at the time he was killed.

The suggestion of appellant that the facts and circumstances in evidence are as consistent with the theory of suicide as they are with the theory of an accident in the course of the deceased's employment is entirely refuted by the record, to say nothing of the presumption arising from the natural love of life and the human instinct of self-preservation.

The judgment of the circuit court quashing the writ of *certiorari* and confirming the award is affirmed.

*Judgment affirmed.*