## The Ryan Company, Appellee, v. The Sanitary District of Chicago, Appellant.

### Gen. No. 29,339.

1. Workmen's compensation—*sufficiency of evidence of negligence by third person causing employee's death.* In an action under the compensation act by an employer against defendant for the death of an employee due to electric current escaping from one of defendant's broken wires, where the evidence of several witnesses showed that an employee of defendant had climbed the pole from which the wire was hanging and had said that a scraper belonging to plaintiff would have to be moved, and tended to show that as deceased, though not required to do so, took hold of the scraper the man on the pole moved the wire causing it to touch the scraper killing deceased, a verdict for plaintiff was justified though all of defendant's employees at the scene of the accident testified that none of them went up the pole prior to the killing of deceased.

2. Workmen's compensation—*when employee acting within scope of employment at time of accidental injury.* An employee engaged in working on a scraper at a point where electric wires were broken was not acting outside the scope of his employment in attempting to move the scraper away from the wire pole at the

suggestion of an employee of defendant who was up the pole to repair the wire, though he was not obliged to move the scraper and his superior had given a general warning to keep away from the broken wires.

3. WORKMEN'S COMPENSATION—*sufficiency of employer's declaration against negligent third person for subrogation.* The declaration in an action by an employer under the compensation act against a third person for causing the death of an employee was sufficient where the only reasonable inference from the facts recited was that the death was not caused by the negligence of the employer but under such circumstances as to create a legal liability in some other person though there were no specific allegations of those facts.

Appeal by defendant from the Circuit Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1924. Affirmed. Opinion filed April 29, 1925.

CLYDE L. DAY, for appellant; HECTOR A. BROUILLET and RUPERT R. LEWIS, of counsel.

J. A. BLOOMINGSTON, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

On September 1, 1915, one Iovino, a man twenty-seven years of age, was electrocuted by coming in contact with an electric wire belonging to the defendant, the Sanitary District. Subsequently, his heirs and next of kin, upon an application to the Industrial Board, were allowed, as against his employer, the plaintiff, the sum of $2,750. The plaintiff, having paid that amount, and being subrogated to the right of the heirs and next of kin, brought this suit. There was a trial before the court, with a jury, and a verdict and judgment for the plaintiff in the sum of $2,750. This appeal is therefrom.

On the day in question, the plaintiff, The Ryan Company, was constructing a 6-foot brick sewer about 23 feet deep, from 71st to 75th streets (east and west streets) on South Western avenue, in Chicago. At

the time in question the work was completed to a point a little south of 71st street on Western avenue. The defendant maintained on Western avenue between 71st and 72nd streets certain transmission lines on 25-foot poles. There were two circuits of three wires each, and they were known as numbers 14 and 17. In the morning of the day in question, about 9 o'clock, the steam shovel of the defendant, which was being used to do the excavating, while being swung to the east, hit one of defendant's poles, breaking all three wires of circuit 14, and one of circuit 17. When the wires fell, there was a flash and the ends sputtered and burned with a bluish flame along the top of the spoil bank. The wires were carrying 12,000 volts. On the ground, north of the steam shovel, there was a backfiller machine which was used to shove back the spoil bank into the trench and refill it. The backfiller consisted of a drum operated by an engine, a long boom over the trench, two cables attached at their outside ends to a metal scraper, and the metal scraper used to push and carry the earth back into the trench. When the machine was in operation, the hands of the metal scraper were grasped by a workman, and as the cables were moved or drawn in, the scraper was drawn forward, directed by the workmen, and the earth shoved or pushed into the trench. On the day in question, Iovino's job was running the scraper. When the wires broke, Ryan, secretary of the plaintiff company, and superintendent of the work, stopped all the work, ordered the men away, and then, about 9:40 a. m., telephoned the defendant's downtown office. He was referred to the South Side branch, and then called up there and told them their wires were down on Western avenue near 72nd street, and asked them to shut the current off. After some discussion, they said they would. One Kloss was at the time load dispatcher at the defendant's station at 31st and Western avenue. Kloss opened circuit

14 and sent a repair gang out to look and see which wires were down and to report to him. He told the foreman circuit 14 was open, but did not say anything about 17, although there had been some evidence that something was wrong about it. The circuit breaker about four minutes before Ryan called him, had indicated that there was trouble on the line. The repair gang went from a point 11 miles away, and made the repairs, and at 10:35 Kloss was notified that it was done. Mentch, foreman of the repair gang, when he first got word, started for 72nd and Western avenue with a number of helpers, and arrived there in about thirty minutes, at 9:50 a. m. Mentch, called by the defendant, said that when he got out of the automobile he started to look around; that four of the six wires, that is three of 14 and one of 17, were down; that there was electricity in all three of 17 at the time, but none in the wires of 14; that he went within about 15 feet of the pole, which was closer than any of his men went; that while he was near the automobile, getting ready, he heard a scream, looked up and saw Iovino near one of the scoop shovels standing as though he had been struck; that he and others endeavored to get him to breathe, and then he went and called the office for a doctor and a pulmotor. Rores, for the defendant, corroborated Mentch. He testified that no one was on the pole at the time; that shortly after the repair gang arrived he heard a yell and saw Iovino, 10 or 15 feet away, getting off the spoil bank; that he did not see him killed; that when he arrived the live wire of number 17 was hanging quietly alongside the pole, its lower end being about a foot above the ground, and no sparks showing; that after the accident, he saw the scraper about 5 feet from the pole. S. H. Reed, a ground man and one of the repair crew, corroborated Mentch and Rores. He testified that none of them went up the pole before Iovino was killed; that he saw Iovino pick up the scraper, which was

4 or 5 feet away from the pole, and undertake to operate it and swing it into the wire that was hanging from the north side of the pole; that it was the yoke of the scraper that struck the wire.

On the testimony of Mentch, Rores and S. H. Reed, for the defendant, it is contended that Iovino brought about the danger and his death through his own negligence, but the testimony for the plaintiff presents a different state of facts.

Connolly, an air-brake inspector for the belt railroad, who lived in a house on the west side of the street, about a 100 feet south of the *locus in quo,* and who saw it from his house, testified that he saw a blue flame on the top of the clay; that Ryan, the contractor, then came into his house and he, the witness, got the telephone number of the Sanitary District for Ryan; that Ryan then telephoned that a wire had been broken and he wanted the power shut off; that a short time afterwards he saw two linemen arrive and one of them went up the pole where the wire was broken. On cross-examination, he testified that he saw the man on the pole from his window; that he was up on top very close to the cross-arm; that he is sure of it. He further testified that afterwards he went over and saw Iovino dying; that the scraper was five or six feet from the pole; that there were three holes in the yoke; that the wire was hanging from one of the cross-arms, to the northeast, about two feet from the pole. O. R. Reed, a civil engineer for the City of Chicago, testified that the scraper was about a foot and a half from the pole when the wire broke; that about half an hour afterwards the Sanitary District men came; that one of the men started up the pole; that, apparently, Iovino went to pull the scraper out of his way; that at that instant the dangling wire touched the bale of the scraper; that there was then a ball of fire and Iovino fell back yelling; that it was his opinion that the man on the pole had the wire in his hand; that up

to the time the man took hold of the wire it was hanging on the earth and up to the time Iovino took hold of the scraper the wire had not struck it. On cross-examination, he testified that when the wires came down Ryan warned the men to keep away from the pole; that it was his positive recollection that the man was on the pole at the time of the accident.

Tinley, a steam shovel engineer, employed by the plaintiff, testified that, at the time, he was standing on the back end of the steam shovel, about 50 feet from the pole; that he first saw two linemen, one of whom went up the pole, leaving one on the bank; that the one on the pole asked for the scraper to be moved away from the pole and Iovino went over and took hold of the handle of the scraper; that there was then a flash and Iovino screamed and fell backwards; that the man on the pole had one of the wires in his hands; that before it had been hanging, quiet, from the pole; that as near as he could see, when the man on the pole took hold of it, it moved and touched the scraper; that the scraper was lying against the pole and the wire was a foot the other side of it. On cross-examination, he testified that he heard Ryan, after the wires were down, tell the men to get away; that he heard the man on the pole say, "That scraper will have to be moved," and then he saw Iovino go and try to move it; that there was a man on the pole prior to the accident; that he was up near the cross-arm 30 or 40 feet away from him, the witness; that it was five minutes or so before Iovino was struck that the lineman asked to have the scraper removed.

Morrissy, a hoisting engineer, for the plaintiff, testified that when the repair crew came, one man went up the pole before Iovino was killed; that he could not tell whether the man on the pole had taken hold of the wire or not. On cross-examination he testified that one of the repair crew started to go up the pole and got half way up before the accident; that

he could not say whether the lineman took hold of the wire or not.

Ryan, of the plaintiff company, and a contractor, testified that he could not recall what the repair men did when they got there, nor whether they were on the pole or not; that the first thing he knew about the man being shocked was when he saw a flash and heard a scream; that he was not present when the doctor came; that the accident had unnerved him; that before the accident the scraper was between one and five feet from the wire; that the wire was hanging down, and was still. On cross-examination, he testified that when the wires came down, he ordered his men away, and stopped all operation; that he did not order the deceased to take hold of the scraper.

There is evidence, as the foregoing shows, that the scraper was near the pole, that the charged wire was hanging down and was not moving, that one of the repair crew went up the pole, that he asked that the scraper be moved, said "that scraper will have to be moved"; that Iovino took hold of it to move it; that the man up the pole took hold of the wire and moved it so that it touched the scraper, and that as a result Iovino was killed. The testimony of the repair crew that none of them went up the pole is categorically denied by Connolly, O. R. Reed, Tinley and Morrissy; and Connolly and Reed were disinterested witnesses. Such being the situation, the jury may have refused all credence to Mentch, Rores and S. H. Reed of the defendant's repair crew. The evidence of Tinley, taken in conjunction with its corroboration, in great part by that of Connolly, O. R. Reed and Morrissy, is very persuasive. In the face of it, an overriding of the jury's verdict on the ground that it was clearly against the weight of the evidence, would be in our judgment unreasonable. If the lineman went up the pole, and when up asked for the scraper to be moved, and then when Iovino took hold

of it, the linemen took hold of the wire, which till then was hanging still, and moved it so that it struck the scraper and so caused Iovino's death, it was a highly negligent act. And, even though Iovino did not have to accede to the request, and although he may have known that the wire was dangerous, yet, as taking hold of the scraper was in and of itself an innocuous act, he is not chargeable with any contributory negligence. The act of moving the wire, and the jury may have believed it took place, was from its beginning to its end a single isolated, independent act of negligence, which alone was responsible, in the eyes of the law, for Iovino's death.

There is no evidence that Iovino moved the scraper to and against the charged wire. In fact, it is a fair inference that he took hold of it, while it was a harmless thing, to move it away for the convenience of the defendant's lineman; and that what he intended and undertook to do would have been fully accomplished without hurt, had it not been for the single act of negligence of the lineman. He did not, as in the case of *Haertel v. Pennsylvania Light & Power Co.*, 219 Pa. St. 640, apparently heedlessly put himself in contact with the wire. In *Rowe v. Taylorville Elec. Co.*, 213 Ill. 318, it was held that an electric light company was not liable for the death of a telephone man who, knowing that an electric light wire was defectively insulated, allowed a telephone wire to get in contact with the electric light wire, thinking there was no current turned on. There the voluntary movements of the man killed were the sole cause of his death. He was not doing, as in the instant case, an act which in and of itself could be accomplished without hurt.

It is contended that Iovino when he undertook to move the scraper was acting outside of the scope of his employment. That does not seem tenable. It was his business to assist in the use of the scraper. It was the particular tool he used in his employment.

When the request was made that the scraper be moved, he might have refused, but, it does not follow that because he did take hold of it, he was not working at the time for his employer. What Ryan had said was but a general admonition. *Rockford Cabinet Co. v. Industrial Commission*, 295 Ill. 332; *Walsh Teaming Co. v. Industrial Commission*, 290 Ill. 536; *Mississippi River Power Co. v. Industrial Commission*, 289 Ill. 353.

It is contended that the motion in arrest of judgment should have been allowed on the ground that the declaration did not state a cause of action. That is based on the claim that it was not alleged in the declaration, (1) that Iovino's death "was not proximately caused by the negligence of the employer or his employees," but (2) was caused under circumstances creating a legal liability for damages in some person other than the employer to pay damages. The facts recited in the declaration before the amendment were sufficient. The only reasonable inference from them on this subject is that the death was not caused by the negligence of the employer and was caused only under such circumstances as to create a liability for damages in some other person. That was sufficient.

After carefully considering the case, we are of the opinion that the judgment must be affirmed.

*Affirmed.*

O'CONNOR, P. J., and THOMSON, J., concur.