CATHARINE COLE

*v.*

EMMA COLE *et al.*

*Filed at Springfield October 30, 1894.*

1. EVIDENCE—*proof required to establish negative averment.* Such evidence as, in the absence of counter testimony, affords reasonable ground for presuming that a negative averment is true, is sufficient to throw the burden of proof upon the adversary.

2. SAME—*what will overcome presumption of validity of marriage.* The presumption of a valid marriage, arising from proof of the ceremony, is destroyed, and the burden shifts to the person asserting it, where it appears that the wife of the alleged husband, by a former marriage, is living, has been true to her vows, and that such first marriage was not dissolved in the jurisdiction where she lived.*

3. WITNESS—*competency of supposed second wife to testify.* Proof of a former marriage and living wife being made *aliunde*, the supposed second wife becomes a competent witness to admissions by the alleged husband, during cohabitation, that he was never divorced from the first wife.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

Messrs. CONKLING & GROUT, for the appellant.

Messrs. PATTON & HAMILTON, for the appellees.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

This is an appeal from a decree assigning dower and ordering partition of certain real estate, rendered by the court below upon a bill in chancery by appellees, against appellant. The bill alleged title to the premises in one George Cole, who died intestate, seized thereof, leaving certain brothers and sisters his only heirs. Emma Cole claimed dower as his surviving widow. Appellant was made defendant to the bill, with the allegation that she

---

*For a collection of the authorities on presumptions arising from a ceremony of marriage, see note to *Megginson* v. *Megginson*, 14 L. R. A. 540.

also claimed to be the widow of George Cole, but averring that she was never legally married to him. She answered, setting up that she was lawfully married to said George Cole in the State of Indiana, September 28, 1888, and lived with him as his wife from that time until his death. She denied that the complainant Emma Cole had any interest whatever in the premises, and claimed in her own right one-half thereof in fee, and dower in the other half. The only litigated question in the case was, as to which of the two, Emma or Catharine, was the lawful surviving widow of George Cole, deceased. The court below found that issue against appellant, and entered its decree in accordance with the prayer of the bill. The only ground of reversal urged upon this appeal is, that the finding against appellant was not authorized by the proofs.

It is clear from the testimony of Emma Cole, as well as that of other witnesses, that she was legally married to the deceased in Staffordshire, England, on the 13th day of February, 1865, and there lived and cohabited with him for about one year, when he deserted her and came to this country. She continued to live in England, and still resides there. He never returned to that country. He married one Amelia Hahn in Sangamon county, this State, in 1875, and lived with her until about 1887, when she obtained a divorce from him, and he soon after went to Brazil, Indiana, and there, on the 18th of September, 1888, married appellant, and lived with her until his death, about one year later. The question is, was this last marriage void because of the former one to Emma Cole.

Counsel for appellant insist, as a matter of law, that, her marriage being proved, the presumption in favor of its validity is such as to cast the burthen upon those questioning it to show its illegality, and, therefore, that unless Emma Cole has proved that the marriage between herself and George Cole was never dissolved, his mar-

riage to appellant must be held valid. As a general statement of the rule of evidence in this State in such cases, the proposition is supported by *Schmisseur et al.* v. *Beatrie et al.* 147 Ill. 210, and cases there cited. But counsel for appellees insist upon the authority of decisions by the Supreme Court of Iowa, that the presumption in favor of the validity of a second marriage, where the husband or the wife of the first is shown to be living, only places a burthen of proving that the first has not been dissolved when it is shown that the acts and conduct of both parties have in some way been inconsistent with the continuance of the marriage relations, and it is contended, without this qualification great injustice may be done an innocent wife through the willful wrong of her husband. She, it may be said, remains true to her marriage vows. He deserts her without cause, goes to a foreign country and contracts a second but void marriage. She may be, and generally is in such a case, powerless to prove that he had not at some time, in some jurisdiction, obtained a divorce. Shall she, upon a mere presumption of his innocence, be deprived of all her right as a wife or widow because she cannot produce such negative proof?

We do not think a fair construction of our decisions could logically lead to such a result. In the *Schmisseur case, supra,* we said: "Although the responsibility was upon the complainants of proving the negative contention that a divorce had not been obtained before the marriage of 1876, yet it is well settled that a party is not required to make plenary proof of a negative averment. It is enough that he introduces such evidence as, in the absence of all counter testimony, will afford reasonable ground for presuming that the allegation is true; and when this is done, the *onus probandi* will be thrown on his adversary. 1 Greenleaf on Evidence, sec. 78." Suppose, as in this case she did, the wife proves her marriage; that she in no way violated her marriage ob-

ligations; that her husband, without cause, deserted her; that she had no knowledge of his second marriage until after his death; that she had no personal knowledge of his having obtained a divorce, and her marriage was never dissolved in the jurisdiction where she lived when he deserted her and where she continued to live to the time of his death; would not these facts, in the absence of all counter testimony, afford reasonable ground for presuming that no divorce was obtained? The validity of the second marriage is presumed only because of the presumption (which is always indulged in favor of innocence) that a man will not commit the crime of bigamy. But the foregoing facts being proved by the unoffending wife, the question of innocence is no longer a matter of presumption. The husband had no valid grounds for divorce. To obtain one he must have sworn falsely himself, or procured others to do so. If her testimony, and that of witnesses testifying in her behalf, is true as to her conduct and his, he could not, without fraud upon a court, or perjury, obtain a divorce. We think, therefore, the evidence that the wife had done nothing inconsistent with her marital duty was sufficient to overcome the presumption in favor of the legality of appellant's marriage, and shift the burthen of proving it upon her.

Without having critically examined the Iowa cases cited, we apprehend that the only substantial difference between the rule laid down by them and our own decisions is as to the burthen of proof, in the first instance, to show that the acts and conduct of the first wife or husband have not been inconsistent with the continuance of the marriage relation.

It was, however, also shown by the testimony of the Illinois wife, Amelia Hahn, and by one of his brothers, that George Cole admitted that he was not divorced from his wife Emma. But it is contended neither of these witnesses was competent to prove the fact,—the former because she testified to conversations or admissions be-

tween herself and Cole during the continuance of the marriage relation between them, and the brother because he was a party in interest. The position as to Amelia Hahn is, that she was only competent to testify to conversations and admissions upon clear proof that she never was his wife, and that to admit her testimony is assuming the very fact sought to be proved. Positive proof that the wife of a former valid marriage was living was made by other testimony. "*Prima facie,* every person is competent to testify on all issues. If he is to be excluded by the policy of the law, the burthen is on the party objecting to him to show the reason for such exclusion. * * * Where a man and woman lived, as they supposed, as husband and wife, but separated in consequence of the woman discovering a former husband believed to be dead was still alive, it was held that the woman was a competent witness against such a man with whom she thus lived as a second husband, even as to facts she learned from him during their cohabitation, for when a former existing marriage is conceded, no subsequent marriage, no matter how solemn, can operate to invest witnesses with incapacities which a valid marriage alone can establish." Wharton on Evidence, (2d ed.) sec. 421. Greenleaf on Evidence lays down the rule in the following language: "On the other hand, upon a trial for polygamy, the marriage being proven and not controverted, the woman with whom the second marriage was had is a competent witness, for the second marriage was void." 1 Greenleaf, sec. 339.

We do not deem it important to pass upon the competency of Alfred Cole. Without reference to his testimony the evidence in this record abundantly sustains the decree of the circuit court, and it will be affirmed.

*Decree affirmed.*