**In re Estate of Clara Dedmore, Deceased.**
**Fred James Waggoner, Appellant, v. Clinton E. Dedmore, Individually and as Administrator of the Estate of Clara Dedmore, Appellee.**

**Gen. No. 8,117.**

Opinion filed May 22, 1930.

SILBER, ISAACS, SILBER & WOLEY, for appellant; DONALD N. CLAUSEN and HERBERT W. HIRSH, of counsel.

DONOVAN, BRAY & GRAY, for appellee.

MR. JUSTICE JONES delivered the opinion of the court.

Fred James Waggoner and Clinton E. Dedmore each claim to be the surviving husband of Clara Dedmore, deceased, Waggoner by virtue of a marriage consummated in 1916, and Dedmore by a marriage entered into in 1927. Decedent died at Joliet, Illinois, on September 10, 1928, as the result of an automobile accident. On October 16, 1928, Clinton E. Dedmore was appointed administrator of her estate, and on October 19, he made *ex parte* proof of heirship, upon which proof the probate court entered a finding that he is her surviving husband.

On November 22, 1928, Fred James Waggoner filed in the probate court his petition for the removal of Dedmore as administrator and his own appointment as administrator *de bonis non*. Later, he filed a petition to vacate the finding of heirship previously made, and for a new finding. In each petition he set out his marriage to decedent in 1916 and his alleged rights under that marriage. After a hearing the probate court removed Dedmore as administrator and appointed Waggoner administrator *de bonis non*. The finding of heir-

ship was vacated and the court found that Fred James Waggoner is the surviving husband of decedent. From both orders Dedmore appealed to the circuit court where the causes were consolidated. The circuit court found that Dedmore is the surviving husband and is entitled to letters of administration. This appeal is prosecuted from that decree.

It is a general rule that where a valid marriage is shown, a presumption exists that the status of that marriage continues. A second marriage is void where either of the parties to it has a living undivorced spouse by a former marriage. But in the absence of evidence to the contrary, a first ceremonial marriage will be presumed to have been terminated by death or divorce prior to the time of a second ceremonial marriage by one of the parties. The second marriage being shown, the law raises a strong presumption in favor of its legality, which is not overcome by mere proof of a prior marriage and that one of the parties thereto had not obtained a divorce, because the other party to such prior marriage may have obtained such divorce, thus terminating the marriage. (*Schmisseur v. Beatrie,* 147 Ill. 210; *Potter v. Clapp,* 203 Ill. 592.)

The law is so positive in requiring a party who asserts the illegality of a marriage to take the burden of proving it, that it sometimes involves the proving of a negative. (*Schmisseur v. Beatrie, supra.*) Because of the presumption that the second marriage was valid, the burden of proof rested upon appellant to show there had been no divorce from the ties of the prior marriage. Although the responsibility was upon appellant of proving that a divorce had not been obtained before the marriage of decedent to Dedmore, yet he was not required to make plenary proof of a negative averment. It is enough that he introduce such evidence as, in the absence of all counter-testimony, will afford reasonable ground for presuming that the averment is true, and when this is done, the

*onus probandi* will be thrown on his adversary. (*Schmisseur v. Beatrie, supra; Vigus v. O'Bannon,* 118 Ill. 334; *Cole v. Cole,* 153 Ill. 585.)

The law jealously regards the marriage relation and makes reasonable assumptions in its favor, but it has no special regard for second marriages in preference to first marriages. (*Turner v. Williams,* 202 Mass. 500.) The validity of the second marriage is presumed only because of the presumption that a person will not commit the crime of bigamy. (*Cole v. Cole, supra.*) The presumption that the marriage between decedent and Dedmore was valid is not, however, evidence in itself, but is a mere legal conclusion from the fact of the marriage, which may be rebutted by evidence. Presumptions are never indulged in against established facts. They are indulged in only to supply the place of facts. As soon as evidence is produced which is contrary to the presumption, the presumption vanishes entirely. (*Osborne v. Osborne,* 325 Ill. 229; *Lohr v. H. Barkmann Cartage Co.,* 335 Ill. 335.)

The testimony shows that Fred James Waggoner and Clara Dorothy Ehlers were lawfully married at Fort Dodge, Iowa, on February 16, 1916. After their marriage they lived in Omaha, Nebraska, from 1919 until 1923, when they moved to Chicago. They rented a furnished apartment at 1617 North LaSalle Street. Their name appeared on the mail box and decedent introduced Waggoner as her husband. They lived together in Chicago from 1923 until 1926, separating occasionally on account of differences between them. In 1925, Waggoner worked in Dayton, Ohio, for a few weeks, during which time his wife visited him, but he never established a home there.

They separated in Chicago in 1926, the exact time not being shown by the record. Clara Waggoner remained in Chicago, living with her brother's family from the first part of August, 1926, until the spring of 1927, when she moved to Joliet. On May 27, 1927, she

went through a marriage ceremony, under the name of Clara Ehlers, with appellee, Dedmore. Waggoner received two letters from Clara, mailed at Joliet on October 23, 1927, and September 4, 1928, respectively, addressed to him at 17 Quincy Street, Chicago, and 2258 Orchard Street, Chicago, respectively. No testimony tending to show that he changed his residence from the City of Chicago appears in the record. His residence being established in Chicago in 1926, the presumption is that it continued there and the burden of proof to show a change of residence is upon the party asserting such change. (*People v. Estate of Moir*, 207 Ill. 180; *In re Estate of Colton*, 129 Iowa 541.)

Testimony was introduced showing an examination of the records and files of the courts having chancery jurisdiction, in both Cook county and Will county, had been made and that no divorces had been granted in either county to appellant or decedent from 1916 to and including 1928, and no bill for divorce had been filed by either of them. So far as shown by this record, a divorce could not have been lawfully granted to appellant, or to decedent in any other place than in one of those two counties during the period specified. Cases where the record shows only that one of the parties had not been divorced are not controlling or persuasive where the record fairly shows that neither of the parties had obtained a divorce. It is said in *Gamble v. Rucker*, 124 Tenn. 415, "The burden is upon the person attacking the validity of such (second) marriage to show that there was no such divorce. This may be shown, and generally should be shown, by evidence that the records of the courts have been searched where such decree or judgment should be found, if it existed at all, and that they show no such entry."

The letter which decedent wrote to appellant under date of October 23, 1927, from Joliet, tells him he is the only one she really and truly loves, and concludes by saying "So will close with all my love to you from

your wife still in the eyes of God.'' ᐧ The closing expression indicates that the fact she had never been lawfully divorced from Waggoner was preying on her mind. Her letter of September 4, 1928, is to the effect that she had been happy the week before when she thought he would take her back and tells of her suffering when she learned differently. There is nothing in the record to show that Waggoner ever knew of her marriage to Dedmore.

A letter was introduced in evidence, purporting to have been written by Waggoner in which he suggested a divorce, but he and his wife lived together as husband and wife for about two years after the letter was written. Dedmore wrote a letter on October 31, 1928 to Dr. F. F. Ehlers, a brother of decedent, relative to Clara's life insurance. This letter makes it evident that Dedmore was possessed of information which caused him to doubt that decedent had ever been divorced.

The evidence in the record is sufficient to overcome the presumption that decedent and Waggoner were divorced prior to her marriage to Dedmore, and as there is no affirmative proof tending to show a divorce, the chancellor was in error in rendering a decree finding that Dedmore was the surviving husband of decedent and denying the petitions of appellant.

The order of the circuit court is reversed and the orders of the probate court are affirmed.

*Order of circuit court reversed. Orders of probate court affirmed.*

''June 25, 1930. On motion of appellant the order herein reversing the order of the Circuit Court and affirming the order of the Probate Court is hereby modified so as to read as follows: 'The order of the Circuit Court is reversed and the cause is remanded to that court with directions to enter an order in conformity with the prayer of the petitions of the said Fred James Wagoner.'

"The said order in this court is further amended by striking out the following language in the opinion herein, to wit: 'Order of Circuit Court reversed. Orders of the Probate Court affirmed,' and by inserting in lieu thereof, the following: 'Order of Circuit Court reversed and cause remanded to that court with directions.'"