(No. 43253.—

JOAN M. SPARLING, Appellee, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(DeMERT & DOUGHERTY, INC., *et al.*, Appellants.)

*Opinion filed April 1, 1971.—Rehearing denied May 26, 1971.*

GOLDENHERSH, J., dissenting.

APPEAL from the Circuit Court of Lake County; the Hon. WILLIAM G. EOVALDI, Judge, presiding.

MORRILL, KOUTSKY, KLOMANN & CHUHAK, of Chicago, (SIDNEY Z. KARASIK and ELLIS B. ROSENZWEIG, of counsel,) for appellants.

GERALD C. SNYDER, of Waukegan, (SNYDER, CLARKE, DALZIEL, HOLMQUIST & JOHNSON, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

William C. Sparling died on November 10, 1966, as the result of accidental injuries received in the course of his employment. The question presented on this appeal is whether Joan Sparling or Bette Lou Sparling is his widow and entitled to the compensation provided by section 7(a) of the Workmen's Compensation Act for the "widow * * * whom he [the employee] was under legal obligation to support * * *." (Ill. Rev. Stat. 1965, ch. 48, par. 138.7(a).) The arbitrator and Industrial Commission found that Bette Lou Sparling was the widow of William C. Sparling, but the circuit court of Lake County reversed those findings and ruled in favor of Joan Sparling.

At the hearing before the arbitrator, Bette Lou Sparling testified that she and the deceased were married on October 23, 1954, and that one child, William Scott, was born of their marriage on August 19, 1955. A certified copy of the marriage license was introduced into evidence.

Bette Lou Sparling testified further that she went to

reside with her mother some time in the latter part of 1956, but that she and the deceased continued to live together "on and off" until August of 1957. While she resided at her mother's, the deceased would call her in the middle of the night, and as a result she moved to a new address in August, 1957, and secured an unlisted telephone number. From that time until 1965 she neither saw nor heard from the deceased although he was "quite aware" of where she lived. In 1965 the deceased began telephoning her again, both at home and at work. From the time of their separation the deceased did not support her or their son, and she did not see the deceased after August of 1957.

She testified that she did not try to stay informed as to the whereabouts of the deceased and did not know that he had married Joan Sparling. She had never talked to the latter until the deceased's death, when she telephoned Joan Sparling to ask if the deceased had ever gotten a divorce. She said that she and the deceased consulted an attorney about commencing a divorce action in the summer of 1957, that "they took him across the street to be summoned for divorce," but that she never signed any papers and the divorce action was never culminated. She testified that she never instituted any subsequent divorce action against the deceased, and that she had received no notice and had no knowledge of any such action instituted against her by the deceased.

Joan Sparling testified before the arbitrator that she and the deceased were married in Tijuana, Mexico, on October 6, 1956, but that the documents to evidence the marriage had been lost. Two children were born to them—one in September of 1957 and the other in February of 1961. She also testified that she and the deceased lived together as husband and wife from November of 1956 until his death, that she did not know Bette Lou Sparling until the latter telephoned her after the deceased's death, and she did not know of any 1957 divorce proceeding.

On this evidence the arbitrator found that Bette Lou Sparling was the deceased's widow and therefore entitled to the compensation provided in section 7(a) of the Workmen's Compensation Act. (Ill. Rev. Stat. 1965, ch. 48, par. 138.7(a).) He also found that all three children were entitled to compensation. See *Yellow Cab Co.* v. *Industrial Com.* (1969), 42 Ill.2d 226.

At the hearing on review, Joan Sparling testified that, in addition to the marriage performed in Tijuana, she and the deceased were married a second time on October 6, 1962, in Illinois. When she was asked by her attorney, "How did you happen to be married a second time?", she answered: "I might as well be married in the United States as well as in Mexico." A certified copy of the marriage license for the Illinois wedding was introduced into evidence. The Commission affirmed the decision of the arbitrator. On review the circuit court of Lake County set aside that portion of the order that awarded the widow's benefits to Bette Lou Sparling and awarded them to Joan Sparling.

The right of a widow to receive compensation depends solely on whether, at the time of his death, the deceased was under a legal obligation to support her. As we noted recently in *Harmes* v. *Industrial Com.* (1968), 40 Ill.2d 488: "It is significant * * * that in referring to the right of the widow to the award, the section of the Workmen's Compensation Act is silent as to any requirement of dependency, but is limited to a legal obligation of the employee to support. * * * Angerstein, Illinois Workmen's Compensation, Vol. II (Rev. Ed. 1952), subsec. 1301, p. 160, states: * * * 'Where there has been a valid legal marriage, and the deceased employee at the time of the injury was under legal obligation to support the widow, it is immaterial that she may have been living apart from him at the time of the injury or even that she may have been living apart for a number of years and that she was not dependent upon him for support or that he had not contributed anything to her

support. Neither does it in any way affect her right to compensation that she, during such time, did not ask for support and did not take any legal action to compel the husband to support her. She is entitled to compensation if there existed a legal obligation on the part of the deceased employee to support her at the time of the injury. (*Goelitz Co. v. Industrial Board,* 1917, 278 Ill. 164, 115 N.E. 855 and *Smith-Lohr Coal Mining Co. v. Industrial Commission,* 1919, 286 Ill. 34, 121 N.E. 231.)' " 40 Ill.2d at 491.

The obligation of a husband to support his wife is imposed by law and depends upon the marriage relation (*Goelitz Co. v. Industrial Board* (1917), 278 Ill. 164), and when, as in this case, there has been a valid, legal marriage, any subsequent marriage is void and has no legal effect, unless prior to the second marriage one of the parties to the first marriage died or secured a divorce. *Cartwright* v. *McGown* (1887), 121 Ill. 388.

In order to uphold the validity of her marriage to the deceased, Joan Sparling argues that "when a second marriage is shown, a strong presumption in favor of its legality is raised by law and casts the burden upon the one attacking the second marriage of proving that one of the parties to the second marriage had not been divorced from his or her former spouse before the second marriage," and that this burden was not discharged by Bette Lou Sparling.

In accordance with the weight of authority, we have said that in the absence of evidence to the contrary, we will presume a previous divorce in order to sustain a second marriage. (See, *e.g., Schmisseur* v. *Beatrie* (1893), 147 Ill. 210; *Cole* v. *Cole* (1894), 153 Ill. 585; *Winter* v. *Dibble* (1911), 251 Ill. 200. See also *In re Estate of Dedmore* (1930), 257 Ill. App. 519; *In re Estate of Panico* (1932), 268 Ill. App. 585; *Baer* v. *DeBerry* (1961), 31 Ill. App. 2d 86.) We have also said, however, that the presumption may be rebutted by evidence which, standing alone, affords reasonable grounds for concluding that no divorce has been secured. *Schmisseur*

v. *Beatrie* (1893), 147 Ill. 210, 217; *Cole* v. *Cole* (1894), 153 Ill. 585, 587-88. See also, *In re Estate of Panico* (1932), 268 Ill. App. 585, 590-91; *In re Estate of Dedmore* (1930), 257 Ill. App. 519, 522-23.

We are of the opinion that the arbitrator and the Commission properly concluded, as a matter of fact, that the record in this case did not justify the invocation of the presumption upon which Joan Sparling relies. They were warranted in believing that at the time of the Mexican marriage in October of 1956 the deceased was still living on and off with his first wife, and that there had been no discussion of a divorce between them prior to August of 1957. Nothing in the record suggests that the deceased obtained a divorce between August of 1957 and October of 1962 when he and Joan Sparling were married for the second time on the sixth anniversary of their Mexican marriage. And the testimony of Bette Lou Sparling that the deceased was aware of where she was living during that period, together with her testimony that she received no notice and had no knowledge of any divorce action instituted by the deceased, afforded reasonable grounds for believing that no divorce had been obtained by the deceased. *Cf. Harmes* v. *Industrial Com.* (1968), 40 Ill.2d 488.

The judgment of the circuit court of Lake County is reversed, and the decision of the Industrial Commission is confirmed.

*Judgment reversed;*
*decision confirmed.*

Mr. JUSTICE GOLDENHERSH, dissenting:

I respectfully dissent from the majority opinion and would affirm the judgment. In my opinion the testimony of Bette Lou Sparling, as a matter of law, is insufficient to overcome the presumption of the validity of the decedent's marriage to Joan Sparling.

The evidence shows a long period of cohabitation with

Joan. The testimony of Rev. John E. Hayes that the deceased and Joan attended church together, the records of the baptism of the two children, and the filing of joint income tax returns clearly establish the requisite reputation of marriage.

An analysis of the authorities upon which the majority relies shows those cases are clearly distinguishable. In *Schmisseur* v. *Beatrie,* 147 Ill. 210, Nicholas Beatrie, Jr. was shown to have married Barbara Anstedt on November 12, 1872. On November 14, 1876, he filed suit for divorce and on the same day married Margaret Hube. The divorce action was subsequently dismissed and this was held sufficient to prove that when he married Margaret Hube he had not been divorced.

In *Cole* v. *Cole,* 153 Ill. 585, the evidence showed the decedent was married in England, and the court held that the evidence that he had deserted his wife, had never returned to England and that she had been true to her marital vows, met the requirement of *Schmisseur* that she introduce "such evidence as, in the absence of all counter testimony, will afford reasonable ground for presuming that the allegation is true * * *." 147 Ill. at 217.

In *Cartwright* v. *McGown,* 121 Ill. 388, Braxton Lewis was married in Kentucky in 1841, left his wife, and in 1843 was married in Illinois. His Kentucky spouse obtained a decree of divorce in 1846 and Lewis did not thereafter remarry his Illinois wife. The court held the evidence was sufficient to overcome the presumption of validity of his Illinois marriage.

Bette Lou's evidence, at best, raises some question as to the validity of the Mexican marriage but certainly does not overcome the presumption of the validity of the Rockford marriage 6 years later. A proper interpretation of the preseumption of validity would require us to presume, assuming, *arguendo,* some defect in the first marriage, that

the disability was removed subsequent thereto, and the second marriage was valid.

The evidence shows that Sparling during the entire period in question lived in Lake and Cook Counties. Evidence that the records of those counties had been searched and no record of a divorce found is conspicuous by its absence. The testimony of Bette Lou, standing alone, falls far short of overcoming the presumption.